(No. 37921.— )

Howard D. Canady, Appellant, *vs.* Dixie L. Canady, Appellee.

*Opinion filed March 18, 1964.*

ROBERT H. RICE, of East St. Louis, for appellant.

GOLDENHERSH & GOLDENHERSH, of East St. Louis, for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Howard Canady instituted this divorce action against his wife, Dixie. She was granted a divorce upon her counterclaim, and the husband has appealed. He does not question the decree insofar as it grants his wife a divorce,

but he contends (1) that the circumstances did not warrant an award of "alimony in gross"; (2) that the amount of alimony awarded was unfair, and (3) that the award of attorney's fees to the wife was erroneous. A freehold is involved.

The parties were married in 1939, and with the exception of "some periods when he left home," they lived together until the husband left home finally on May 5, 1962. They have one son who was 23 years old when the case was tried in February of 1963. The husband, who was then 43 years old, has been steadily employed, apparently primarily as a machinist, although he receives, in addition to his wages, commissions on charges made for the labor of other employees and a percentage of the sales of rebuilt equipment. In recent years his gross earnings were: 1959—$14,548; 1960—$12,373; 1961—$13,165; 1962—$14,261.

The wife worked as a saleslady in a clothing store from May of 1946 until May of 1955, when her doctor advised her to stop working or get a job where she would not be on her feet. She became a licensed real-estate broker, and since 1959 she has worked on occasion as a saleswoman for a real-estate firm. In 1959 and 1960 her commissions from completed sales were $453 and $1949, respectively. She was unable to work at all in 1961 because of a stomach ulcer. In April of 1962 she earned a commission of $625. Since then she has not actively engaged in the real-estate business because of illness, although she occasionally attended sales meetings at the broker's office.

From their combined earnings the parties purchased a home valued at about $12,000, title to which was in joint tenancy. Securities worth about $2900, which had also been purchased from combined earnings, were in Mrs. Canady's name. After her husband left home in May of 1962, she sold securities worth $664, and applied that sum to the payment of her medical and living expenses, which her husband refused to pay.

The parties also had $8034 in two joint bank accounts. When the husband had left home on a prior occasion he had withdrawn $5000 from a joint account, and after his return he restored $4500. Shortly after the separation in May of 1962, the wife withdrew the entire amount on deposit and, without her husband's consent, gave $7500 to their son, to be used to purchase an interest in a business. She retained the remaining $534. Sometime prior to the trial she also received a refund of $1064 on a lapsed insurance policy by signing her husband's name on a check payable to him. At the time of the trial in February, 1963, she was in possession of a 1960 Oldsmobile, title to which was in her husband's name. He then owned a new 1962 Buick, on which he had made an initial payment of $1200, and he was making installment payments on a recently purchased boat worth about $800. The monthly living and medical expenses of the wife were approximately $497; those of the husband were approximately $450.

Mrs. Canady had a history of illness and had frequently been hospitalized, most recently in April of 1962. At the time of the trial she was seeing her doctor once every two weeks and taking medicines prescribed by him. The doctor testified that she had an "active duodenal ulcer which is responding poorly to treatment." He estimated that treatment would continue for about two years if all went well, but that if her condition did not improve she might have to undergo surgery involving the removal of approximately 80 per cent of the stomach and part of the duodenum.

The decree awarded to Mr. Canady the 1962 Buick and the boat. Mrs. Canady was awarded the household furnishings and the 1960 Oldsmobile. She was also awarded the stock held in her name, as support money for the period between May 5, 1962, and the date of the decree. As a further award for support during this period the court extinguished any claim that the husband might have to the $664 which were the proceeds from the sale of stock

by the wife, the $534 remaining from the joint savings accounts, and the $1064 refund on the insurance policy. The husband was ordered to pay any unpaid household bills and insurance premiums that might have accrued prior to May 5, 1962, and to pay the 1961 real-estate taxes on the home. He was further ordered to pay any medical expenses up to $300 that had been incurred by his wife up to the date of the decree.

The decree also awarded to Mrs. Canady the sum of $49,350 as "alimony in gross." This sum was to be paid as follows: the husband was to convey his undivided half interest in their home to the wife, and to receive credit for $6000. He was also credited with $3750, one half of the amount advanced by his wife to their son. Any repayment made by the son, however, was to belong to the wife. The remaining sum of $39,600 was to be paid in monthly installments of $300 over a period of eleven years.

Both the form of an award of alimony, and its amount, rest primarily in the discretion of the trial court. As this court said in *Doyle* v. *Doyle,* 268 Ill. 96, 101: "The allowance of alimony in gross is clearly within the scope of the court's authority, and the amount to be allowed and whether in money or in property, real or personal, are matters largely within the discretion of the chancellor but subject to correction when that discretion is improperly exercised." So far as the amount of the award is concerned, we may set aside at once the husband's complaint that the award was inordinately high. The required monthly payments of $300, terminable in 11 years, were clearly not unreasonable in the light of the earnings of the husband and the present and probable future needs of the wife. And in his attack upon the disposition of property between the parties, the husband apparently loses sight of the fact that the home and the bank accounts awarded to the wife were jointly owned, (see *Savich* v. *Savich,* 12 Ill.2d 454, 460), and the securities were in the name of the wife. Moreover, all of

these assets were acquired from the joint earnings of the parties.

The more troublesome question concerns the form of the decree, which provides for a "settlement in lieu of alimony" within the meaning of section 18 of the Divorce Act. (Ill. Rev. Stat. 1961, chap. 40, par. 19.) Unlike an award of periodic alimony which remains within the control of the court, such a settlement is not modifiable or terminable by the court after the decree becomes final. (*Walters* v. *Walters,* 409 Ill. 298.) The advantage. of the usual award of alimony in the form of periodic payments, subject to the continuing control of the court, is that it can be modified to meet the changing circumstances of the parties. (*Schwarz* v. *Schwarz,* 27 Ill.2d 140.) The General Assembly has recognized, however, that there are situations in which such an award may not fully achieve a "fit, reasonable and just" result, and so it has authorized the court to "order the husband or wife, as the case may be, to pay to the other party such sum of money, or convey to the party such real or personal property, payable or to be conveyed either in gross or by installments as settlement in lieu of alimony, as the court deems equitable." Ill. Rev. Stat. 1961, chap. 40, par. 19.

Upon this record the trial judge was warranted in regarding the illness of the wife as the dominant feature of the case. She faces a long period of medical care with the ultimate possibility of a serious operation if more conservative treatment is not successful. In his testimony the doctor pointed out the deleterious effect of uncertainty upon her health, and emphasized the importance of eliminating or minimizing emotional stress. These factors, coupled with the violent disposition of the husband, as shown by the record, argued in favor of a final disposition of the rights of the parties and against the advisability of allowing room for future disputes about modification of the decree. Of course there are risks in such a decree, but there would also have

been risks in a decree that was subject to modification. We can not say that the trial court abused its discretion in shaping the decree as it did.

The decree awarded the wife $1500 for attorney's fees, to be paid within six months, and the husband attacks the award on the ground that it "is excessive and unsubstantiated by anything in the record." The allowance of attorney's fees in a divorce proceeding "rests in the sound discretion of the trial court, and unless such discretion is clearly abused, its exercise will not be interfered with." (*Ylonen* v. *Ylonen,* 2 Ill.2d 111, 121.) There was no request that evidence be heard, and the trial judge had the record before him which showed the financial circumstances of the parties and indicated the legal services rendered. The plaintiff did not abandon his complaint for divorce until the actual trial, so that preparation for a full contest was required. We see no clear abuse of discretion in the fee awarded.

The plaintiff also contends, however, that the award must be reversed because there is "a complete void in the record in either the evidence, arguments or suggestions of counsel as to the amount of fees proper or reasonable under the circumstances." This contention is based upon a misunderstanding of the court's opinion in *Czarnecki* v. *Czarnecki,* 341 Ill. 629, decided in 1930. The decision in that case did not announce a rule that there can be no award of attorneys' fees in a divorce case unless evidence is heard as to the reasonableness of the fee. Rather the decision was a routine application of "the requirement heretofore existing in Illinois that the burden of preserving the necessary evidence supporting a decree or order in equity by findings of fact in the decree or by certificate of evidence was upon the person in whose favor the decree or order was entered." (McCaskill, Ill. Civ. Prac. Act Annot., p. 158 (1933).) That requirement was eliminated by the Civil Practice Act

of 1933 and no longer exists. Cf. Ill. Rev. Stat. 1963, chap. 110, par. 64.

The decree of the circuit court of St. Clair County is affirmed.

*Decree affirmed.*