HELGA DONNELLEY, Plaintiff-Appellee, *v.* JAMES R. DONNELLEY, Defendant-Appellant and Cross-Appellee.—(RINELLA & RINELLA, Petitioner-Appellee and Cross-Appellant.)

First District (1st Division)    No. 78-1065

Opinion filed January 14, 1980.

Isham, Lincoln & Beale, of Chicago (Peter C. John, of counsel), for appellant.

Rinella & Rinella, of Chicago, *pro se* (David B. Carlson, of counsel), for appellees.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This appeal is taken by James R. Donnelley (hereinafter defendant) from an order of the circuit court of Cook County awarding his wife, Helga Donnelley (hereinafter plaintiff), partial attorneys' fees as a part of their divorce judgment. On appeal the defendant argues: (1) that the trial court erred in requiring the defendant to pay a major portion of the plaintiff's attorneys' fees in the absence of proof that the plaintiff was unable to pay her own fees; and (2) that the fees awarded to plaintiff's attorneys were excessive. Pursuant to section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 508(b)), plaintiff's attorneys cross-appealed, asserting that the trial court should have awarded them the full amount of attorneys' fees requested and that the defendant should be held solely liable for whatever fees are finally awarded. For the reasons hereinafter enumerated, we affirm the trial court's allocation of the plaintiff's attorneys' fees between the plaintiff and the defendant, but reverse and reduce the amount of the attorneys' fees awarded by the trial court.

Plaintiff's action for divorce was filed on October 16, 1975, to dissolve her 13-year-old marriage to the defendant. Subsequently, on March 11, 1976, the trial court ordered the defendant to pay the plaintiff $3,000 a month as temporary support during the pendency of the suit and $10,000 as temporary attorneys' fees. After 2½ years of litigation, the trial court

granted the plaintiff a judgment for divorce on September 30, 1977. The parties were granted joint custody of their two teenage children who attend school in Switzerland. The judgment also awarded the plaintiff, as alimony in gross, $720,000 in equal monthly payments of $4,000 without defeasance due to remarriage for the first 60 months. Additionally, the plaintiff received $200,000 in consideration of her equitable interests in the parties' two residences, a condominium in Chicago and an apartment in Switzerland. The parties divided the household furnishings themselves. The court reserved consideration on the question of attorneys' fees and court costs. No appeal has been taken from the judgment for divorce.

On November 22, 1977, the plaintiff's attorneys, Rinella and Rinella (hereinafter petitioner), filed a petition for the entry of an order for attorneys' fees and costs. The petition alleged that 546½ hours were expended in providing the plaintiff with legal services during the 2½ years the case was pending and sought an award of $85,000. The petition further alleged the defendant's ability to pay for attorneys' fees and court costs and the plaintiff's inability to pay based on her possession "of only nominal assets and income * * *."

The defendant filed an objection to the petition contesting the plaintiff's alleged inability to pay and also the reasonableness, efficiency, and effectiveness of petitioner's professional services. An evidentiary hearing was held on January 5, 1978. On March 9, 1978, the trial court entered a judgment order awarding petitioner $65,000 in attorneys' fees. The court ordered the defendant to pay $55,000 of this amount with a $10,000 credit for the amount paid by the defendant incident to the trial court's earlier award of $10,000 in temporary attorneys' fees. The plaintiff was ordered to pay the $10,000 balance plus costs in the amount of $1,250. It is from this order that the defendant appeals and petitioner cross-appeals. It should be noted that the plaintiff is not a party to this appeal.

■■ The allowance of attorneys' fees is within the sound discretion of the trial court and such an award will not be reversed unless the trial court has clearly abused its discretion. (*Canady v. Canady* (1964), 30 Ill. 2d 440, 197 N.E.2d 42; *Ylonen v. Ylonen* (1954), 2 Ill. 2d 111, 117 N.E.2d 98; *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576.) To justify an allowance of attorneys' fees, the party seeking this relief must show financial inability to pay; financial needs within the context of the couple's prior standard of living; and the ability of the other spouse to pay the attorneys' fees. *Gasperini v. Gasperini; Kenly v. Kenly* (1977), 47 Ill. App. 3d 694, 365 N.E.2d 379.

■ The defendant makes no claim that he is unable to pay. Rather he claims that the plaintiff's ample assets prove her capacity to pay. We disagree. The trial judge who heard the parties' divorce case also presided over the petition for fees. Therefore, the trial court was well apprised of

the parties' relative financial positions as well as the specific individual assets of each party. Moreover, we should note that it is not necessary for a party to be destitute in order for a trial court to award attorneys' fees. (*Gilmore v. Gilmore* (1979), 74 Ill. App. 3d 831, 393 N.E.2d 33; *Carvallo v. Carvallo* (1978), 62 Ill. App. 3d 394, 378 N.E.2d 1288.) Rather, as the court noted recently in *Gasperini v. Gasperini*:

> "It is sufficient to support an award of fees that disbursement of the wife's funds would exhaust her own estate, or strip her of her means of support and undermine her economic stability." (57 Ill. App. 3d 578, 582.)

Based on these principles, courts have sustained a trial court's award of fees where the party seeking the award had a regular income or salary (*Gilmore v. Gilmore*; *Gasperini v. Gasperini*); a savings account (*Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 318 N.E.2d 282); stocks, securities or other liquid assets (*Kenly v. Kenly* (1977), 47 Ill. App. 3d 694, 365 N.E.2d 379; *Kaufman v. Kaufman*); or real estate (*Gasperini v. Gasperini; Kenly v. Kenly*).

In the present case, the plaintiff was granted alimony in gross in the amount of $720,000 and an additional $200,000 as a settlement of her rights in the parties' residences in Chicago and Switzerland. Her assets at the time of filing for divorce of approximately $200,000 were composed of $90,000 in R.R. Donnelley stock, $15,000 in securities, $68,300 in furs and jewelry, and $27,000 in cash. The plaintiff had an income of $5,300 from her assets but no liabilities at this time. The plaintiff was not employed at the time the divorce was filed. At this time the defendant had net assets of $3,676,400. His assets included $3,394,100 in his own trust, $200,000 in shares of R. R. Donnelley stock, $270,000 in real estate, $284,000 in art work, and a yearly gross income of $171,800. The defendant is also the beneficiary under his father's will of a residual trust valued at between $1,500,000 and $2,000,000 with a yearly income value of between $75,000 and $100,000.

While the present case is unique because of the great wealth of the parties, we are still required to decide this case upon settled legal principles. A reading of Illinois divorce attorney's fees cases suggests that the propriety of an award of attorney's fees depends on the particular facts of each case. In determining whether a party is unable to pay attorney's fees the assets of that party must be weighed in light of the parties' standard of living. (*Kenly v. Kenly* (1977), 47 Ill. App. 3d 694, 365 N.E.2d 379.) In the present case it is undisputed that the parties were very wealthy and that the trial court took this factor into consideration in awarding attorneys' fees. The plaintiff had only $27,000 in cash with an expected yearly income of only $5,300. It was not necessary, as the defendant urges, for the plaintiff to liquidate her assets and consequently

reduce her income-producing assets in order to be able to pay her own attorneys' fees. (*Kenly v. Kenly.*) In *Kenly* this court sustained an award of attorney's fees where the plaintiff had a 50% share in $136,000 constituting the proceeds from the sale of the family residence, income of $22,500 from securities and trusts, $350,000 in securities, $25,000 to $30,000 in bank deposits and $90,000 equity in her home. There, we noted that:

> "* * * the wife should not be required to deplete her capital resources or income-producing assets in order to provide for her support or to pay her attorney during the pendency of the suit for separate maintenance or divorce. [Citations.]" (47 Ill. App. 3d 694, 697.)

We concluded that the plaintiff's "substantial securities holdings and other assets do not alter this result." 47 Ill. App. 3d 694, 697.

■■ Nor do we find the defendant's argument that the plaintiff could have paid her attorneys out of her alimony in gross award or out of the additional $200,000 award persuasive. (*Hall v. Hall* (1976), 43 Ill. App. 3d 97, 356 N.E.2d 1156; *Green v. Green* (1976), 41 Ill. App. 3d 154, 354 N.E.2d 661.) As the trial court explained in making its ruling:

> "All, or at least a substantial portion, of the $200,000 awarded to her [plaintiff] for her equity in the various assets of the defendant is to be utilized for the purchase by the plaintiff of living quarters for herself and for her children when they are home from school.
>
> The award to the plaintiff of alimony in gross involves the payment by her of income taxes. The remainder contemplates the use of these funds for her living and traveling expenses."

For all of the aforesaid reasons, we find that the trial court's determination that the plaintiff was unable to pay all of her attorneys' fees was not palpably erroneous or an abuse of discretion. In concluding that it was not error for the trial court to award the plaintiff $55,000 in attorneys' fees, we should note that we also find no error in the trial court's decision that the plaintiff could afford to pay $10,000 of her attorneys' fees and $1,250 in costs.

The defendant next contends that the fees awarded to the plaintiff's attorneys were excessive. The petition for attorneys' fees sought the "fair and reasonable value" of the legal services performed for the plaintiff by petitioner based on the usual and customary charge for similar services in the city of Chicago and its environs. At the hearing on fees, Sam Rinella, testifying for the petitioner, stated that his firm does not charge at an hourly rate. Rather, fees are computed upon consideration of the time spent in a case, the difficulty of a case, the amount involved, and the type of competition or opposition faced. Time records presented at this hearing revealed that a total of 546½ hours had been spent by the petitioner in providing legal services to the plaintiff. This time was

divided between court and office time; however, no distinction was made in the records between work performed by partners, associates, or clerks.

Attorney's fees are awarded in the sound discretion of the trial court (*Leader v. Cullerton* (1976), 62 Ill. 2d 483, 343 N.E.2d 897; *In re Custody of Scott* (1979), 75 Ill. App. 3d 710, 394 N.E.2d 779); however, a court of review will not hesitate to reduce the fees awarded if they are unreasonably high. (*Leader v. Cullerton*; *Christian v. Christian* (1979), 69 Ill. App. 3d 450, 387 N.E.2d 1254.) In awarding fees, consideration is given by the Illinois courts to a variety of factors including: the skill and expertise of the attorneys employed; the financial positions of the parties; the nature of the controversy; the novelty or difficulty of the questions raised; the importance of the question from a family law viewpoint; the degree of responsibility involved from a management perspective; the time and labor involved; the usual and customary charge for the same or similar services; and the benefit or result provided. (*Christian v. Christian*; *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576.) Of these the time factor is probably given the same weight or greater weight than any other factor. (*Flynn v. Kucharski* (1974), 59 Ill. 2d 61, 319 N.E.2d 1; *Welsh v. Welsh* (1976), 38 Ill. App. 3d 35, 347 N.E.2d 512.) The fee allowance should provide for fair compensation but only for those services which were both reasonable and necessary to the action. (*Gasperini v. Gasperini*; *Moreau v. Moreau* (1973), 9 Ill. App. 3d 1008, 293 N.E.2d 680.) In essence, the award of fees should provide fairness to all concerned: the attorney; the client; and the person who will make the payment. *Gasperini v. Gasperini*; *Green v. Green* (1976), 41 Ill. App. 3d 154, 354 N.E.2d 661.

Application of the foregoing principles indicates that the award of fees in this case is improper. There is no challenge to the skill or expertise of the plaintiff's attorneys or to the financial ability of the parties to pay the present award. We also recognize that the $65,000 award of fees represented a small proportion of the $950,000 award to the plaintiff. (Compare *Gasperini v. Gasperini*.) However, the issues in the present case were routine and uncomplicated despite the existence of the counterclaim in contrast to those raised in other types of actions (*e.g., Flynn v. Kucharski* (1974), 59 Ill. 2d 61, 319 N.E.2d 1) (class action), or other divorce actions (*e.g., Hall v. Hall* (1976), 43 Ill. App. 3d 97, 356 N.E.2d 1156; *Green v. Green*), and there was, in general, an absence of the vigorous advocacy attendant in a truly contested action (*e.g., Flynn v. Kucharski*). The existence of trusts for the support of the children and the fact that both attended school in Switzerland minimized the issues of support and child custody. While ascertainment of the substantial assets of the defendant potentially could have complicated this case (*e.g., Hall v. Hall*), the record reveals a sincere effort by the defendant to disclose his

assets to the plaintiff's attorneys early in these proceedings and to cooperate with plaintiff's attorneys in the verification of these assets. This cooperation obviously decreased the responsibility of the petitioner in ascertaining the defendant's assets. While the defendant's counterclaim and the plaintiff's attempt to obtain alimony in gross did present certain questions of law, no allegation is made that these raised novel questions of importance to the field of family law. Nor is the petitioner's assertion that complex legal issues existed which required extensive legal research borne out by the record. The record indicates that less than 40 hours of research were conducted over the entire course of these proceedings.

In reviewing the petitioner's time records, we find that the total number of hours charged is not supported by the record and must be reduced. Approximately 206 conferences with the plaintiff are noted as consuming 178 hours. This represents about one-third of the total time spent by petitioner on this case. While this time might have actually been spent, there was no showing as to the particular business covered in each conference or the necessity of these conferences. (*Gasperini v. Gasperini; Moreau v. Moreau* (1973), 9 Ill. App. 3d 1008, 293 N.E.2d 680.) Moreover, on cross-examination one of petitioner's attorneys stated that most of these conferences were held over the telephone, some calls were made to said attorney at his home, and some involved general complaints of the plaintiff. While we acknowledge the necessity of the petitioner to be compensated for time expended, we do not think that in all fairness the defendant can be charged with a greater amount of time than was reasonably necessary for such conferences.

■ In reducing the total number of hours allowed in this case we also consider the fact that while the petitioner's time records differentiate between office and court time, the ultimate aggregation of total hours spent on the case in calculating the fee ignores this distinction. Generally, fees are granted in divorce cases upon the basis of a separate hourly rate for court time and office time (*e.g., Christian v. Christian* (1979), 69 Ill. App. 3d 450, 387 N.E.2d 1254). The court time rate is higher in recognition of the greater skill required, but courts will not hesitate to reduce the total number of court time hours billed if, in fact, such skill was not reflected. (*Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576.) Here the fact that no distinction is ultimately made between the nature of work results in charging the same rate for obtaining simple motions as is charged for the analysis of financial documents. We do not think this result can be allowed. Nor do we find that the same hourly rate may be allowed for work performed by partners, associates or law clerks. Yet the calculation of fees from records which do not indicate the status of the person who performed the particular legal work, as occurred in this case, caused just this result.

We turn next to the question of the reasonable rate of compensation for the petitioner's time. The trial court's award of $65,000 provided compensation at a rate of approximately $120 an hour. We find this rate was not substantiated by the record in this case. The petitioner's legal services were performed from 1975 through 1977. In recent cases in which attorney's fees were awarded for services performed during approximately the same time period, this court has allowed much lower hourly rates than was awarded to petitioner by the trial court. *Christian v. Christian* ($75 court time, $35 office time); *Tippet v. Tippet* (1978), 65 Ill. App. 3d 1018, 383 N.E.2d 13 (overall hourly rate of $50 reversed); *Davis v. Davis* (1978), 63 Ill. App. 3d 465, 380 N.E.2d 415 ($40 allowed); *Gasperini v. Gasperini* ($40 allowed); *Green v. Green* (1976), 41 Ill. App. 3d 154, 354 N.E.2d 661.

The factors present in *Green* are analogous to those found in the present case. There the parties also possessed substantial assets with the husband's assets valued at approximately $3,000,000. Unlike the present case, the husband attempted to conceal assets from his wife which complicated the case. However, like the present case a large alimony in gross award was granted. Also similar to the present case a great amount of time was spent in reconciliation efforts. The plaintiff's attorneys sought $75,000 for services rendered in the trial court which was reduced by the trial court to $57,000 and included an award for temporary attorney's fees. This award resulted in an average rate of $127.50 per hour for attorney's fees. On appeal this award was reduced to an aggregate of $27,000. In reducing the fees the trial court noted that:

> "No Illinois cases have been cited, nor have we been able to find any in which an hourly rate of $127.50 has been considered or approved." (41 Ill. App. 3d 154, 171.)

The trial court also made the following comments in regard to the financial ability of the plaintiff's husband to afford the higher rate of compensation.

> "The fee here allowed is in a very substantial amount, and it must be recognized that a determination of substantial assets is also involved. The standing and skill of plaintiff's attorney is well recognized and has not been challenged. The financial ability of the person required to make the payment *may limit* the amount to be awarded, notwithstanding the extensive expenditure of time and labor which may have been required, but on the other hand, the financial ability does not warrant an allowance beyond a fair and reasonable amount." (41 Ill. App. 3d 154, 170.)

We agree with *Green* that a client should not be charged in excess of the fair value of the legal services received merely due to his financial position.

■■ Upon full consideration of *Green*, the facts of this case, and taking

into consideration the high rate of inflation, we conclude that the aggregate allowance of $65,000 in attorneys' fees in the trial court is unreasonably high. In our opinion an aggregate attorneys' fee of $40,000 for the service rendered to the plaintiff is fair and reasonable. In making this determination we do not disturb the trial court's original proportional allocation of the total amount of attorneys' fees between the plaintiff and the defendant. Consequently, the plaintiff will be responsible for the payment of $6,153.50 of the total fees, while the defendant will be responsible for $33,846.50 with credit for the $10,000 paid to the petitioner for temporary fees. In light of this decision, we find it unnecessary to reach the petitioner's argument that the fees awarded were insufficient.

For the aforesaid reasons the order of the circuit court of Cook County awarding plaintiff partial attorneys' fees is affirmed, but the amount of the attorneys' fees is reduced to an aggregate amount of $40,000 with the above-mentioned amounts constituting the parties' respective shares of the total award.

Judgment affirmed in part and reversed in part.

GOLDBERG, P. J., and McGLOON, J., concur.