*In re* MARRIAGE OF HELEN BORG, Petitioner-Appellant, and PHILIP BORG, Respondent-Appellee.

First District (1st Division)    No. 79-856

Opinion filed April 20, 1981.—Rehearing denied June 15, 1981.

Helen Borg, of Highland Park, for appellant, *pro se*.

Miles N. Beermann and Howard A. London, both of Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

This appeal arises out of the February 9, 1978, judgment of dissolution of the marriage of Helen and Philip Borg. Petitioner Helen Borg appeals *pro se* and alleges that the judgment of dissolution was erroneous and raises numerous other objections, to both the substantive rulings and procedures utilized in the trial court.

We affirm.

On October 10, 1972, Helen Borg (petitioner) filed a complaint for divorce from her husband Philip Borg (respondent) on the ground that he was guilty of mental cruelty. Respondent filed a countercomplaint for divorce, alleging that petitioner was guilty of mental cruelty. On December 13, 1972, petitioner filed an amended complaint changing her cause of action to separate maintenance. Respondent did not withdraw his countercomplaint. The trial court awarded petitioner temporary alimony in the amount of $1,850 per month.

After numerous continuances and other delays, the case was assigned to a judge of the circuit court for trial on February 2, 1978. Because she believed that all Cook County judges were prejudiced against her, petitioner petitioned the Illinois Supreme Court for the appointment of a judge from outside Cook County.

On February 2, 1978, both parties and their attorneys appeared before the trial judge. Petitioner's attorney requested a continuance pending the resolution of the petition to the supreme court. The request for a continuance was denied and the trial judge proceeded to conduct a hearing on a petition by respondent, to reduce temporary maintenance. Petitioner and her attorney refused to participate in the hearing.

At the hearing, respondent testified that when the order requiring him to pay $1,850 per month alimony originally was entered in January 1973, he had been earning over $100,000 per year. His gross income for 1977 had decreased to $30,000. The trial court entered an order reducing the award of temporary maintenance to $600 per month.

On February 9, 1978, the trial court entered a judgment of dissolution of marriage. The court found petitioner guilty of extreme and repeated mental cruelty toward respondent. The trial judge scheduled a hearing on the issues of property and maintenance for March 9, 1978. On February 23, 1978, petitioner filed a motion for a continuance, claiming that more discovery was needed. Respondent objected to the proposed continuance and petitioner's attorney offered to waive temporary maintenance of $600 per month between March 9 and the date of trial. The court granted the continuance and approved the abatement.

It was not until September 11, 1978, that petitioner moved to reinstate the payment of temporary maintenance in the amount of $1,850. The trial judge ordered respondent to resume maintenance payments of $600 per month until a supplemental judgment was entered. On November 9, 1978, after the entry of the supplemental judgment, petitioner filed a rule to show cause in which she alleged that respondent was in arrears in the amount of $4,050 for monies he should have paid her between February 1 and November 1, 1978. The court ruled that there was no arrearage.

On appeal, petitioner argues that (1) the trial court erred in conducting a hearing while her motion for the appointment of an out-of-county judge was pending in the Illinois Supreme Court; (2) the trial court erred in refusing to continue the trial to enable her to file a petition for change of venue; (3) the trial court's judgment for dissolution of marriage is void because respondent failed to file a countercomplaint to petitioner's amended petition for separate maintenance; (4) the trial court's finding that she was guilty of extreme and repeated mental cruelty is not supported by the evidence; (5) the trial court's distribution of the marital property was grossly inadequate; (6) the trial court erred in reducing temporary maintenance; and (7) the trial court abused its discretion in ordering the abatement of temporary maintenance.

Petitioner first contends that the trial court erred in conducting a hearing while her motion for the appointment of an out-of-county judge was pending in the Illinois Supreme Court.

On February 2, 1978, petitioner and respondent and their respective attorneys appeared before the trial court. Petitioner's attorney informed the court that because his client felt that all Cook County judges were prejudiced against her, she had filed a petition for the appointment of an out-of-county judge pursuant to article VI, paragraph 16 of the Illinois Constitution. Petitioner's attorney further stated that he and his client would not participate in the proceedings until such petition was acted upon by the supreme court. The trial judge advised petitioner and her attorney that he intended to proceed with the hearing on the grounds for dissolution regardless of whether they participated. Petitioner and her attorney promptly left the courtroom.

Shortly thereafter, the two reentered the courtroom and requested that the judge continue the matter so that petitioner's attorney could prepare a motion for change of venue. The request was denied and the hearing continued.

On February 9, 1978, the supreme court denied petitioner's request for the appointment of an out-of-county judge. Petitioner now argues that the trial court lost jurisdiction between January 26 and February 9, 1978.

■■ For two reasons, we find that the trial court did not err in conducting the hearing while the petition was pending in the supreme court. One, petitioner failed to file a motion to stay the proceedings while the petition was pending. Two, her request for the appointment of an out-of-county judge subsequently was denied by the supreme court.

Second, petitioner argues that the trial court erred in refusing to continue the trial to enable her to file a petition for change of venue. As stated above, shortly after leaving the courtroom and refusing to participate in the proceedings, petitioner's attorney returned and requested a continuance so that petitioner's attorney could prepare a motion for change of venue. The attorney suggested that the judge was prejudiced because he refused to continue the trial.

The right to a change of venue based on prejudice of the trial court, is absolute as long as the requirements of the venue statute are met. (*Joseph v. Joseph* (1973), 15 Ill. App. 3d 714, 718, 305 N.E.2d 19; *Roherty v. Green* (1965), 57 Ill. App. 2d 362, 366, 206 N.E.2d 756.) The venue statute specifically states that a petition for change of venue must be presented before trial or hearing begins. See Ill. Rev. Stat. 1977, ch. 110, par. 503.

■ It is our opinion that petitioner's request for time to prepare a motion for change of venue was not timely. Moreover, it appears to have been nothing more than a dilatory tactic. Thus, the trial court acted properly in refusing to continue the trial to enable petitioner to file a petition for change of venue.

Third, petitioner claims that the trial court's judgment for dissolution of marriage is void because respondent failed to file a countercomplaint

to petitioner's amended petition for separate maintenance. A brief reiteration of the pertinent facts is necessary to explain petitioner's contention.

On October 10, 1972, petitioner filed for divorce. On October 18, 1972, respondent filed his answer and countercomplaint. Approximately five years later, on December 7, 1977, petitioner filed an amended petition for separate maintenance pursuant to a trial court order. Respondent filed an answer on December 19, 1977. He did not withdraw his countercomplaint for divorce.

■■ Petitioner's contention is based on a misunderstanding of the nature of a countercomplaint for divorce. It is not a responsive pleading, but rather a request for affirmative relief. The petitioner's withdrawal or amendment of her complaint does not preclude the trial court from ruling on the merits of cross actions set up by respondent. (See *Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 356 N.E.2d 164.) Thus, we find no merit in petitioner's third contention.

Fourth, petitioner contends that the finding that she was guilty of extreme and repeated mental cruelty is not supported by the evidence. To determine whether a spouse is entitled to a dissolution of marriage on grounds of mental cruelty, we must consider the effect of the conduct on the complaining spouse and on the marriage itself. *Christian v. Christian* (1979), 69 Ill. App. 3d 450, 454, 387 N.E.2d 1254.

Respondent testified that petitioner was responsible for his heart attack and that while he was recuperating she initiated a heated argument, after which respondent had to leave home in order to preserve his health. Further, respondent stated that petitioner accused him of being solely responsible for their son's death, that petitioner often accused him of marital infidelity, that petitioner told him she wished he were dead, that petitioner often embarrassed him in front of his friends and that she frequently called him vile names, sometimes in front of their children.

From respondent's standpoint, petitioner's conduct rendered his life miserable and unendurable. With the above stated facts in mind, we find that the trial judge acted within his discretion in granting the dissolution of marriage on the ground of mental cruelty. See *Christian v. Christian* (1979), 69 Ill. App. 3d 450, 387 N.E.2d 1254; *Farah v. Farah* (1975), 25 Ill. App. 3d 481, 323 N.E.2d 361.

■■ Fifth, we must consider whether the trial court's distribution of the marital property was inequitable. The trial court awarded petitioner one-half of the proceeds from the sale of the marital home and a $5,000 mutual fund and ordered respondent to pay her $110,000 in lieu of maintenance. The record indicates that the home had a value of $125,000. Thus, the total value of petitioner's award was approximately $177,500, which equals approximately 26% of the marital property.

Section 503(c) of the Illinois Marriage and Dissolution Act requires that the court shall divide marital property in just proportions considering all relevant factors. (Ill. Rev. Stat. 1977, ch. 40, par. 503(c).) Cases decided under the act have established that an equitable division of marital property is not necessarily an equal one. *In re Marriage of Lloyd* (1980), 81 Ill. App. 3d 311, 312, 401 N.E.2d 328; *In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 100, 393 N.E.2d 1065.

The trial court's judgment will not be disturbed in the absence of an abuse of discretion. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126.) Discretion is abused only if no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the court abused its discretion. (78 Ill. App. 3d 1123, 1127.) Moreover, a disposition of property is not unfair merely because a party is unhappy with it. 78 Ill. App. 3d 1123, 1133.

The trial court's division of the marital property in this case clearly was reasonable. The court pointed out that the funds awarded to petitioner, plus the proceeds from the sale of the marital home would yield nearly $15,000 per year if properly invested. The Department of Commerce Statistics indicates that a "high" urban budget for a retired couple is $12,069 per annum as of autumn 1978. (Statistical Abstract of the U.S. Dept. of Commerce, Table No. 796 (1979).) In light of these facts and statistics, we find that the trial court did not abuse its discretion in dividing the marital property.

In accordance with our finding that the trial court awarded petitioner sufficient property to provide for her reasonable needs, we find that the court properly denied petitioner's request for periodic maintenance. See Ill. Rev. Stat. 1977, ch. 40, par. 504.

■■ The sixth issue we must discuss is whether the trial court erred in reducing petitioner's temporary maintenance from $1,850 to $600 per month in February 1978. When the original order was entered, setting temporary maintenance at $1,850 per month, respondent was employed and earning in excess of $100,000 per annum. In February 1978, respondent was unemployed. His gross income in 1977 was approximately $30,000.

The law provides that maintenance may be reduced upon a showing of a substantial change in circumstances. (See Ill. Rev. Stat. 1977, ch. 40, par. 510(a).) Since respondent presented evidence that his income had decreased by 70%, we find that the trial court did not abuse its discretion in reducing petitioner's temporary maintenance by approximately 66%.

Petitioner additionally complains that the trial court erred in entering *ex parte* the order reducing temporary maintenance. She neglects to mention, however, two facts which substantially weaken her argument.

First, she failed to file a response to the petition for reduction of temporary maintenance. Second, she had notice of and an opportunity to participate in the hearing on the petition, but refused to do so.

Finally, petitioner argues that the trial court abused its discretion in abating temporary maintenance between March 9 and September 15, 1978. On February 23, 1978, shortly before the date the trial on the issues of maintenance and property was to begin, petitioner filed a motion for a continuance on the ground that more discovery was needed. The trial court noted that the case was almost six years old and suggested that the request for a continuance was dilatory in nature. When respondent objected to the proposed continuance, petitioner's attorney offered to waive temporary maintenance of $600 per month between March 9 and the date of trial. The trial court granted the continuance and approved the abatement of temporary maintenance.

Petitioner did not submit a request to reinstate the order of temporary maintenance until September 15, 1978. On that day, petitioner applied to the court for past due support. The court denied petitioner's request for past due support, but ruled that she could collect $600 per month prospectively until the date of entry of the supplemental judgment. The supplemental judgment finally was entered on November 9, 1978.

After the entry of the supplemental judgment, petitioner presented a petition for a rule to show cause in which she alleged that she should have been paid $600 per month for the 10 month period between February 1 and November 1, 1978. The trial court ruled that there was no arrearage. ■■ It is our opinion that since petitioner's attorney suggested and agreed to the abatement of temporary maintenance, petitioner is precluded from challenging the abatement on appeal. When the trial court agreed to the abatement, it obviously was not convinced that additional discovery was necessary or proper. It would have been grossly unfair to require respondent to subsidize petitioner's delays. The abatement of temporary maintenance, therefore, was fair in that it allowed petitioner to obtain a continuance without prejudicing respondent.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

GOLDBERG, P. J. and O'CONNOR, J., concur.