*In re* MARRIAGE OF CHRISTINE E. ZUMMO, Petitioner-Appellee, and VINCENT K. ZUMMO, Respondent-Appellant.

Fourth District   No. 4—87—0495

Opinion filed March 30, 1988.

Peter K. Woody, of Springfield, for appellant.

John R. Keith and Robert J. Eggers, of Holley, Keith & Huntley, of Springfield, for appellee.

JUSTICE LUND delivered the opinion of the court:

On June 24, 1987, the circuit court of Sangamon County entered a judgment of dissolution of marriage dissolving the marriage of Christine and Vincent Zummo. The court awarded petitioner Christine Zummo custody of their children, divided the property between them, and ordered respondent Vincent Zummo to pay a portion of petitioner's attorney fees. Respondent appeals the portion of the order involving division of property and payment of attorney fees. We affirm.

The parties were married on March 15, 1973, and have two children, Nicholas, born January 3, 1974, and Victor, born July 3, 1979. A petition for dissolution of marriage and a petition for an order of protection were filed by petitioner on July 5, 1985, with an *ex parte* order of protection being entered that day. On July 15, an interim order of protection was entered giving petitioner temporary possession of the marital residence. Respondent was given the right to enter the garage as he needed to get to his tools and supplies used in his part-time carpet laying business. On July 18, petitioner filed a request for modification of the order of protection alleging that on July 17 respondent harassed her and her guests. On July 18, the court entered an order prohibiting respondent from going to the garage.

On September 9, 1985, cars driven by the parties were involved in a collision in which petitioner was injured. Unremarkably, the parties' versions of the incident differed substantially. Respondent said petitioner was following too closely and hit him from behind. Petitioner testified respondent attempted to force her off the road, and her car struck the rear of his vehicle. Petitioner remained at the scene, but respondent fled. Respondent subsequently pleaded guilty to a violation of the Illinois Domestic Violence Act (Ill. Rev. Stat. 1985, ch. 40, pars. 2301—1 through 2303—5) as a result of the occurrence.

The trial in this matter was conducted over four days, September 30, 1986, December 10, 1986, March 16, 1987, and March 26, 1987. Respondent, who employed two other attorneys earlier in the proceeding, switched attorneys in the middle of the trial.

Petitioner was 36 years old and in good health at the time of the hearing. She is a high school graduate with two years of college. At the time she married respondent, she was working at the United States Post Office. However, three months later, upon becoming pregnant, she terminated her employment. Eleven years later, she went to

work part time as a cashier for a supermarket when respondent injured his knee. She was still employed there at the time of the filing of the petition for dissolution. She now works full time as a cashier at a car dealership. Her net pay is approximately $175 per week. She is not entitled to any pension benefits.

Respondent is 45 years old and has been employed by the Springfield fire department for the last 12 years. During the marriage, he operated a carpet installation business. However, he injured his knee and has not performed that type of work since 1985. His annual income with the fire department in 1986 was approximately $23,000. He belongs to a mandatory pension plan and provides health insurance for the children through the department. His net take-home pay at the time of the hearing was approximately $1,624 per month.

After the marriage, the parties lived in a home owned by respondent. Petitioner testified she helped respondent remodel this house at a cost of $4,000 to $5,000. After approximately three years, they sold this house and bought one on Rutledge Street making a down payment of $27,000 on the house from the proceeds of the sale. The Rutledge house had not been lived in for six years and required extensive work. They put on a new roof and new siding. They put in new plumbing, new wiring, and a new heating and air-conditioning system. They redid the walls, added two bedrooms, a garage, and an above-ground swimming pool. Petitioner testified she helped by scraping wallpaper, putting up drywall, cleaning, running errands, and assisting with the plumbing and electrical work. Respondent stated she only ran a few errands.

In January 1985, they purchased a house on Franklin Street located across the alley from the Rutledge house. They purchased this house for $11,000 using a life insurance policy and a portion of respondent's workers' compensation claim as a down payment. Respondent remodeled this house, and he and his parents currently live there. At one time, his parents paid rent of $275 per month, but once respondent moved in, it was lowered to $200 per month.

The appraisers testified concerning the value of the properties. They valued the Rutledge house at $68,000 and $71,000, respectively. It had an outstanding mortgage at that time of approximately $5,000. The Franklin property was valued at $27,500 and $18,000, respectively, and it had an outstanding mortgage of approximately $6,000.

Other than their household belongings, the personal property of interest included a 1985 Oldsmobile, a 1976 truck, a 1983 dune buggy, carpet service tools, several lawn mowers, a fishing boat, and a gun collection. Respondent's exhibit No. 5 was introduced which listed all

the property in the Rutledge house and to whom respondent believed those items belonged. Petitioner contested several of those items listed.

An expert witness testified the value of respondent's pension on October 28, 1985, was $9,670. He estimated that the value on the date he testified, December 10, 1986, was $12,000. A member of the city of Springfield's Department of Public Health and Safety testified that respondent has accrued 90 sick days. If he retires or leaves the department with that amount, he will be compensated for each day at the rate of five-twelfths his hourly rate of $10.28. Each sick day is a 24-hour day.

At the time of the separation, there was approximately $8,800 in the Springfield Fireman's Credit Union, but at the time of the hearing, it totaled approximately $3,600. On September 30, 1986, respondent testified that he paid $2,500 to Elmer Renfro for sewer work on the Rutledge property and introduced into evidence a receipt for that. On December 10, 1986, he testified similarly. On March 16, 1987, the question came up again, and petitioner had Renfro present to testify. Before Renfro testified, respondent took the stand and admitted he really only paid Renfro $400 and that the receipt was incorrect. He admitted he knew this when he testified earlier.

Finally, petitioner's attorney testified concerning his fee. On September 30, 1986, he filed an affidavit and estimated his fee to be $3,600. His hourly rate is $80 per hour. On December 10, 1986, he offered a more detailed record of his time into evidence. A hearing was originally set for January 2, 1987. However, respondent's previous attorney failed to comply with discovery, requiring a continuance. The court specifically requested petitioner's counsel keep track of his extra time caused by this continuance. On March 16, 1987, counsel presented records showing his fee through February 1987 to be $5,800. He testified his estimation of his total fees and costs would be $7,500.

On June 24, 1987, the court entered the judgment of dissolution of marriage. This order placed the children with petitioner and ordered respondent to pay child support in the amount of $406 per month. Respondent was also ordered to pay maintenance to petitioner for 18 months in the amount of $200. Petitioner was given the Rutledge house subject to the mortgage, the 1985 Oldsmobile, the lawn mowers, and most of the household property in the Rutledge house. Respondent was given the Franklin property, the pickup truck, the dune buggy, his tools, the gun collection, all the interest in the pension, all the value of the sick days, and some of the household furniture. The court also ordered respondent to reimburse petitioner for a

portion of the real estate taxes she paid and her medical expenses from the car accident. Finally, the court ordered respondent to pay $6,500 of petitioner's attorney fees by April 22, 1989.

Respondent first alleges the court erred in ordering him to pay a portion of petitioner's attorney fees. He specifically argues that the court's decision was in error due to the relative financial positions of the parties and that the amount of attorney fees was unreasonable. We disagree on both counts.

■ Pursuant to section 508 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1985, ch. 40, par. 508), a court, after considering the financial resources of the parties, may order either spouse to pay a reasonable amount towards the costs and attorney fees of the other party. The awarding of attorney fees and the proportion to be paid are within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 299, 483 N.E.2d 1229, 1235.) To justify an allowance of attorney fees, the party seeking the relief must show financial inability to pay and the ability of the other party to pay. *Bussey*, 108 Ill. 2d at 299-300, 483 N.E.2d at 1235; *Donnelley v. Donnelley* (1980), 80 Ill. App. 3d 597, 599, 400 N.E.2d 56, 58.

■ Respondent argues petitioner has failed to demonstrate an inability to pay. The record establishes petitioner's net monthly pay is approximately $750. Her total monthly expenses are estimated at $1,700. She will receive $406 per month in child support and for the next 18 months $200 per month in maintenance. At the time of the hearing, she had outstanding debts of over $15,000, of which respondent was ordered to pay $1,100. We are cognizant of the fact that she received possession of the Rutledge home, which has equity in it in excess of $60,000. However, it is well settled that it is not necessary for a party to be destitute in order for the trial court to award attorney fees, but it is sufficient if disbursement of the party's funds would exhaust her own estate or strip her of her means of support and undermine her economic stability. (*Donnelley*, 80 Ill. App. 3d at 600, 400 N.E.2d at 58; *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 582, 373 N.E.2d 576, 579.) That property currently has a monthly mortgage payment of $73. To require petitioner to refinance the house or get a second mortgage would clearly destabilize an already precarious financial situation. It is clear that even with the child support and maintenance she is unable to pay the attorney fees.

Respondent then asserts that even if this is so, she has not demonstrated an ability on his behalf to pay the fees. He has a net

monthly income of $1,624 from the fire department. He listed on his affidavit monthly expenses of $1,377. We note that amount includes $74 for health·insurance already deducted in the calculation of net income. It also includes $183 for the mortgage on the Franklin property. However, respondent is currently receiving $200 a month rent from his parents on that property. His listed expenses also include $300 for rent, but he testified he is living at the Franklin house with his parents. He also listed $400 per month for food though he testified his parents usually buy it, and he only buys some when the boys are visiting. Therefore, his expenses are more accurately reflected as being in the $600 to $800 range. Even considering the child support and maintenance, respondent has an ability to pay the attorney fees. We also note that respondent has the opportunity, though recently he has declined to do so, to work extra hours.

Accordingly, since petitioner has established an inability to pay, and respondent has an ability to pay, we find no abuse of discretion by the court in ordering respondent to pay a share of petitioner's attorney fees.

■ Respondent argues that even if the court properly ordered him to pay a portion of petitioner's attorney fees, the court erred in setting the amount. The allowance of attorney fees in divorce proceedings rests within the sound discretion of the trial court, and the exercise thereof will not be interfered with unless such discretion is clearly abused. (*Canady v. Canady* (1964), 30 Ill. 2d 440, 446, 197 N.E.2d 42, 45; *In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 1117, 421 N.E.2d 1308, 1315.) However, a court of review will not hesitate to reduce the fees awarded if they are unreasonably high. (*Donnelley*, 80 Ill. App. 3d at 602, 400 N.E.2d at 59.) The criteria to be considered in determining these awards include the financial position of the parties; the skill and standing of the attorneys employed; the importance, novelty and difficulty of the questions raised, especially from the family law standpoint; the degree of responsibility involved from a management perspective; the time and labor required; the usual and customary charge in the community; and the benefits resulting to the client. (*Brophy*, 96 Ill. App. 3d at 1118, 421 N.E.2d at 1315; *Donnelley*, 80 Ill. App. 3d at 602, 400 N.E.2d at 59-60.) Of these, the time factor is probably given the same weight or greater weight than any other factor. (*Donnelley*, 80 Ill. App. 3d at 602, 400 N.E.2d at 60.) The fee allowance should provide for fair compensation but only for those services which were both reasonable and necessary to the action. (*Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 582, 373 N.E.2d 576, 579.) Nevertheless, a consideration of the financial

ability of the person required to make the payment may limit the amount to be awarded, notwithstanding that an extensive expenditure of time and labor may have been required. *Green v. Green* (1976), 41 Ill. App. 3d 154, 170, 354 N.E.2d 661, 675.

■ At the original hearing, petitioner's counsel testified as to his hourly rate and fee and submitted an affidavit. Respondent objected to the admission of the affidavit due to the lack of specifics contained therein. Subsequently, petitioner's counsel introduced detailed time records to which respondent did not object. In March 1987, counsel submitted updated time records, and again respondent did not object. At no time did respondent question the number of hours or the hourly rate, nor did he present any evidence on the question.

We cannot conclude under the facts in this case that the court abused its discretion. We acknowledge that the fee is substantial. However, as noted, respondent did not object or present any alternative evidence for the court to rely on. We are also cognizant of the fact that the attorney fees in this case would be much lower but for the repeated appearances involving respondent's violations of the domestic violence orders of protection, the failure of his previous attorney to comply with discovery in January 1987 requiring a continuance, and respondent's failure to tell the truth concerning the alleged $2,500 sewer work.

■ Respondent next contends the court erred in granting maintenance to petitioner, in granting her sole ownership of the marital residence at Rutledge, and in dividing the property. Petitioner notes that respondent cited no case authority in support of his position and argues, therefore, that respondent's alleged errors are unsupported by substantial argument and should be considered waived. (See *Reeder v. Old Oak Town Center* (1984), 124 Ill. App. 3d 1045, 1049, 465 N.E.2d 113, 117.) While the failure to cite case law is not viewed with favor since it is not of much assistance to the reviewing court in analyzing the alleged errors, respondent's brief contains sufficient analysis of the facts to avoid application of the waiver doctrine.

■ In this case, the court awarded petitioner maintenance of $200 per month for 18 months. An award of maintenance is within the discretion of the trial court and will not be reversed on appeal unless it constitutes an abuse of discretion or is against the manifest weight of the evidence. (*In re Marriage of Kaplan* (1986), 149 Ill. App. 3d 23, 33, 500 N.E.2d 612, 619; *In re Marriage of Johnson* (1982), 106 Ill. App. 3d 502, 508, 436 N.E.2d 228, 232.) In order to determine whether the award was proper, it must be reviewed in light of section 504 of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 504).

*Kaplan,* 149 Ill. App. 3d at 33, 500 N.E.2d at 619.

This section provides the court may award maintenance where it finds that the spouse seeking maintenance lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs, and is unable to support herself, or otherwise lacks sufficient income. The factors to be considered in determining the amount and duration of an award include:

"(1) the financial resources of the party seeking maintenance, including marital property apportioned to him ***;

(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and the physical and emotional condition of both parties; [and]

(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." Ill. Rev. Stat. 1983, ch. 40, par. 504(b).

■ Although the court did not specifically give its findings supporting the maintenance award, the basis for such an award is clearly established in the record. The relative financial positions of the parties have been discussed earlier. We again note that respondent has the opportunity for extra work which petitioner does not. This award is also necessary to allow petitioner time to adjust her standard of living from what she had been used to during the marriage to what she will be able to maintain on her limited income.

■ Respondent next complains of the court's distribution of property and, specifically, the awarding of the marital home to petitioner. Section 503(d) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 503(d)) contains the factors to be considered by the court in the division of property. The court has broad discretion under the Act to make an equitable apportionment of marital property. (*Kaplan,* 149 Ill. App. 3d at 31, 500 N.E.2d at 618; *In re Marriage of Bentivenga* (1982), 109 Ill. App. 3d 967, 971, 441 N.E.2d 336, 339.) Such a judgment will not be disturbed on appeal absent an abuse of discretion. (*In re Marriage of Rothbardt* (1981), 99 Ill. App. 3d 561, 564, 425 N.E.2d 1146, 1148.) Discretion is abused only if no reasonable person could take the view adopted by the trial court. *Kaplan,* 149 Ill. App. 3d at 31, 500 N.E.2d at 618; *In re Marriage of Borg* (1981), 96 Ill. App. 3d 282, 287, 421 N.E.2d 214, 218.

■ Respondent argues the evidence shows they placed $27,000

576

down on payment of the Rutledge house, which they received from the sale of a house he owned prior to the marriage. He also asserts the evidence shows he did the work fixing the house up. He, therefore, asserts he should receive some interest in the house. However, the evidence presented was controverted. Petitioner testified they fixed the first house up after they were married. She also testified she assisted respondent in fixing up the marital home. Also, a marital residence owned by both spouses, even if one spouse has furnished all the consideration for it out of nonmarital funds, will be presumed to be marital property absent convincing rebutting evidence. (*In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 223, 422 N.E.2d 635, 638.) Therefore, the Rutledge house is properly considered marital property.

██ Once it is found to be marital property, the assignment of the house must be considered along with the division of all the property. The court basically gave petitioner the marital house, the 1985 Oldsmobile, the household furnishings, and some lawn mowers. Since petitioner has custody of the children, assignment of the house to her is justified. (See Ill. Rev. Stat. 1985, ch. 40, pars. 503(d)(4), (d)(8).) Similarly, the award of the car is justified since the evidence is clear that the car was purchased for petitioner, and she has driven it since that time.

The order dividing the home furnishings granted petitioner the following:

> "All furniture and furnishings and other items of personal property presently located at 1245 North Rutledge Street, Springfield, Illinois except for those items listed under Defendant's Exhibit Number 5 admitted into evidence herein which were marked by color designation in yellow or red and as to which Christine E. Zummo testified that she had same in her possession or control *and* that same was in fact nonmarital property of Vincent K. Zummo or marital property to which she had no objection to same being the sole and separate property of Vincent K. Zummo."

Respondent argues this shows the court improperly abdicated its authority and allowed petitioner to allocate the furnishings. We do not read this as such. Respondent's exhibit No. 5 was a list of the household property where respondent indicated what he believed was marital and nonmarital property and who should receive specific pieces. When petitioner testified, she marked the list with yellow or red and gave her opinion concerning disposition. It is clear that the court passed on the credibility of the parties and found petitioner's testi-

mony more credible, and, therefore, awarded the property in conformity with her testimony. There was no abuse of discretion.

We note this division of property did not result in an equal split but resulted in petitioner receiving in excess of 50% of the value of the marital estate. This was due primarily to the large equity in the marital house which was justifiably awarded to petitioner. However, one of the factors to be considered is "the reasonable opportunity of each spouse for future acquisition of capital assets and income." (Ill. Rev. Stat. 1985, ch. 40, par. 503(d)(10).) It is obvious that respondent is in a much better position in this regard than petitioner.

Respondent next contends the court erred in ordering them to file a joint 1986 income tax return since neither party requested this. While there was not much testimony on the point, it is accepted that, generally, married parties do better under the tax code when they file jointly rather than separately. A joint filing would, thus, result in a preservation of marital assets. We find no abuse of discretion by this order.

Finally, respondent argues the court erred in denying his motion to compel discovery. On February 5, 1987, after respondent's fourth counsel became involved in the case, he submitted a series of interrogatories to be answered by petitioner. On March 11, petitioner having failed to answer same, respondent filed a motion to compel which the court denied. The trial court has wide discretion in the control of discovery. (*Zack Co. v. Sims* (1982), 108 Ill. App. 3d 16, 38, 438 N.E.2d 663, 679; *Cohn v. Board of Education* (1970), 118 Ill. App. 2d 453, 456, 254 N.E.2d 803, 804.) A reviewing court will not interfere with a trial court's ruling on discovery matters unless there is a manifest abuse of discretion. (*Dobbs v. Safeway Insurance Co.* (1978), 66 Ill. App. 3d 400, 402, 384 N.E.2d 34, 36.) The interrogatories submitted were those that would normally be submitted early in the proceeding. In this case, petitioner had already testified twice concerning the matters contained in the interrogatories before they were submitted to her. To require her to answer them would result in the imposition of an unnecessary burden and expense to her in violation of Supreme Court Rule 213(b) (107 Ill. 2d R. 213(b)). There was no abuse of discretion.

For the foregoing reasons, the judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

GREEN, P.J., and KNECHT, J., concur.