SUSAN DAVIS, Plaintiff-Appellee, *v.* JAMES DAVIS, Defendant-Appellant.
Fifth District  No. 77-255

Opinion filed August 2, 1978.—Rehearing denied August 31, 1978.

Ben S. Urban, of Belleville, for appellant.

William F. Sherwood, of Bethalto, for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:
Plaintiff Susan Davis and defendant James Davis were divorced on September 13, 1973, by order of the circuit court of Madison County. Pursuant to the decree plaintiff was granted custody of the couple's two minor children and was awarded $22.50 per week per child for child support. Defendant was permitted liberal visitation including physical custody of the children during the first and third weekends of each month plus four weeks during the summer. Beginning in September of 1975 and continuing through March of 1977, the parties in this case engaged in countless disputes in and out of court over the custody and support of their two children. In addition, the court entered numerous orders, often contradictory in nature, regarding modifications of the decree. The final order from which this appeal is taken was entered on March 3, 1977. This order modified the original decree by allowing each parent alternate continuous custody of the children every four months, with visitation to the noncustodial parent on alternate weekends, and increasing the amount of child support to be paid by defendant from $22.50 to $32 per week per child for those times when plaintiff is in active custody and $20 total per week for the four-month period in which defendant has custody of the children. Finally, attorney's fees in the amount of $1785.12 were granted to the court-appointed guardian ad litem, and in the amount of $3300 to plaintiff's attorney. Defendant was ordered to pay two-thirds of each amount, plaintiff being responsible for the remaining one-third. Defendant appeals from all substantive provisions of the March 3, 1977, order. Plaintiff-appellee did not file a brief in this court although her trial counsel filed a brief on his own behalf addressing only those issues concerning the award of attorney's fees. In addition, plaintiff's counsel has moved that we assess against appellant costs and attorney's fees incurred by counsel in the defense of this appeal. This motion is denied.

Because of the complicated nature as well as the sheer number of proceedings in this case, we shall review them in chronological order. Following the September 18, 1973, divorce, plaintiff filed a petition to show cause why defendant should not be held in contempt. There was no

action taken upon this motion and it was subsequently merged into plaintiff's September 17, 1975, petition to modify the divorce decree. On that same date plaintiff filed a petition for a temporary injunction requesting the court to order defendant to return custody of the children to her. On September 18, 1975, the court held a hearing on plaintiff's motion and on the following day ordered defendant to return the children to plaintiff. Defendant complied with the court's order and the injunction was thereafter dissolved on September 26, 1975. At the September 26 hearing plaintiff sought a temporary increase in child support to $35 per week per child which was ultimately granted when defense counsel failed to appear after the morning recess. On October 31, 1975, the defendant answered the plaintiff's petition and moved to vacate portions of the September 26 order increasing child support.

On December 12, 1975, the court granted ex parte defendant's petition for a temporary injunction. The injunction, supported only by affidavits of the defendant and several of plaintiff's neighbors, ordered temporary custody by defendant in the best interests of the children. The injunction was promptly dissolved by the court on December 16, 1975, and on December 22, 1975, an extensive hearing on the merits of various outstanding pleadings commenced. This hearing continued intermittently through February 20, 1976, during which time testimony from 28 witnesses, comprising more than 1500 pages of the record, was heard by the court.

On March 29, 1976, the court entered an order allowing custody to remain with the plaintiff, but granting defendant "continuous visitation" for alternate six-weeks periods. The order further provided for visitation every other weekend with the parent not then in active custody of the children. The amount of child support payable to plaintiff was decreased to $32 per week per child during plaintiff's active custody and $20 total per week during defendant's six-weeks period of continuous visitation. Finally, defendant was ordered to pay delinquent support equal to the difference between the original amount of $22.50 per week per child and the temporary increase to $35 per week per child provided in the court's September 26, 1975, order. As to the various petitions for citation the trial court declined to hold defendant in contempt for his refusal to comply with the September 26, 1975, order increasing child support or failure to appear in court on that date, but did find defendant in contempt of court for his wilful refusal to return the couple's children to plaintiff on September 14, 1975. The final contempt citation contained in the March 29, 1976, order was directed against defense counsel for his failure to appear in court on the afternoon of September 26, 1975, and subsequent failure to petition for relief from that order until October 31, 1975.

On April 28, 1976, defendant filed a post-trial motion, a motion to

dismiss plaintiff's petition for attorney's fees filed March 12, 1976, and a corresponding petition for payment of his own attorney's fees. In response to defendant's post-trial motion the court on August 27, 1976, rescinded that portion of its earlier order providing alternate six-weeks visitation with each party and reinstated the terms of visitation pursuant to the original decree. Seven weeks later, on October 8, 1976, the same judge again modified the order reinstating the March 29, 1976, decree with several changes. The October order increased the period of active alternate continuous visitation with the children from six weeks to a period of four months, the first such period to be with plaintiff from September 11, 1976, to January 10, 1977. While still requiring defendant to pay delinquent child support, this order dropped all contempt citations against parties and counsel. Specifically finding that plaintiff was unable to fully compensate her counsel, the court ordered the defendant to pay plaintiff's attorney's fees in the amount of $2200 plus two-thirds of the $1072.46 fee awarded to the guardian ad litem. On December 22, 1976, an evidentiary hearing on plaintiff's petition for attorney's fees was conducted by the court after which the matter was taken under advisement.

Following plaintiff's November 5, 1976, motion to reconsider and defendant's post trial motion filed the same date, the court entered what it entitled "Final Order of Modification of Decree of Divorce" on March 3, 1977. This eight-page order reaffirmed the four-month alternate visitation schedule set out in the October 8, 1976, order, reaffirmed the prospective child support payments set out in the October 8 order, but reduced the delinquent amount owed under the September 26, 1975, order to the difference between $22.50 per week per child and $32 per week per child. The final order similarly excused any party or counsel from previous contempt citations. With regard to attorneys' fees the March 3, 1977, order decreased the total award of plaintiff's attorney's fees from $5896 to $3300, but held defendant responsible for the same amount of $2200 and increased the guardian ad litem fees to $1785.12 to be paid under the same 1/3:2/3 formula. Defendant filed a timely notice of appeal from this order.

We have outlined the significant portions of the record in this case to illustrate the obvious hostility between the parties and between counsel. In our opinion this acrimony resulted in unnecessarily extended proceedings. Nevertheless, we have carefully reviewed all of the evidence in the case and believe it supports a modification of the original divorce decree.

The nucleus of the custody dispute is the quality of care and supervision received by the children while plaintiff works and/or entertains herself in the evenings. The evidence clearly established that

plaintiff employed an 18-year-old E.M.H. (Educable Mentally Handicapped) student to babysit with the children three or four nights per week. There were allegations that this babysitter often allowed the children to play outdoors until after 12 midnight during the summer and fall months, that she employed foul language in front of the children, that she failed to properly feed and clothe them, that she failed to discipline them in a predictable fashion, that she allowed them to accompany her to a run-down area of the neighborhood where several peace disturbances, including a shooting, have occurred, that she allows them to run into the street so that they have nearly been struck by passing automobiles, and that she has, on at least one occasion, attempted to frighten the youngest Davis child by telling her "scary stories." There were also accusations that this babysitter was responsible for a sexual encounter involving several neighborhood children who were observed partially undressed and playing in the bushes. From a fair reading of the record we think at least some of these allegations are true.

Barbara Hurocey, who cared for the plaintiff's children in her own home at least once per week from November 1973 through mid-February 1975, testified that plaintiff would never pick up the children before 1 a.m. and often as late as 4:30 a.m. on school nights. There was also evidence that plaintiff's boyfriend occasionally spent the night at her apartment when the children were present.

Defendant, on the other hand, demonstrated that since the original decree in 1973, he has remarried and purchased a home where he resides with his new wife and her daughter by a previous marriage. There was also testimony by defendant's second wife that she desires the defendant's two children to reside with them and that defendant's children and her own daughter have known one another for several years and get along well together.

Plaintiff's evidence consisted of the testimony of relatives, friends, employers and neighbors who stated that plaintiff is a loving, attentive mother who should be allowed to retain custody of her children. While specifically finding both parties fit to have custody, the trial court nevertheless increased the amount of time the children actually spend with defendant. We take this to mean that the trial court believed at least some of the defense testimony. Pursuant to the final order, full custody remained with the plaintiff in name only; that is, in substance the arrangement provides for alternate or joint custody in both parents. We have found only a handful of reported Illinois decisions involving this type of custody order. Since we believe there are definite pitfalls to the arrangement, we take this opportunity to express our views on this troublesome subject.

■■ ■ We note initially that the trial court has broad discretion in

fashioning custody decrees which will be in the child's best interest. This discretion notwithstanding, we believe that alternate custody awards should be made only in certain exceptional situations. Rarely does the "Solomonic" approach to custody inure to the benefit of the young child. In reality, it is usually employed to appease the selfish desires of the parties. The danger that the child will feel that he has no fixed or permanent home is particularly acute where, as here, the child is shifted every four months, including a move during the school term. Even more significant, in our opinion, is the unstabling effect upon the child where the parents are severely antagonistic and openly criticize one another in the child's presence. From the transcript of the court's *in camera* examination of the Davis children, it is apparent that they are suffering from feelings of insecurity and divided loyalty due to the overriding hostility between their parents. Accordingly, we feel the trial court abused its discretion when under these circumstances it ordered physical custody of the children to shift from one party to the other every four months.

Although the authorities are divided as to the wisdom of alternate custody, many jurisdictions which have addressed this issue agree with the view taken herein. (See Annot., 92 A.L.R.2d 695 (1963).) A recent decision by the New York Court of Appeals in *Braiman v. Braiman* (N.Y. App. 1978), 4 Fam. L. Rep. 2522, contains an excellent discussion of the devastating effects alternate custody may have upon children of embattled parents:

> "But, that there is no perfect solution to the divided family does not mean that the court should not recognize the division in fact of the family. Children need a home base. Particularly where alternating physical custody is directed, such custody could, and would generally, further the insecurity and resultant pain frequently experienced by the young victims of shattered families (see Foster & Freed, Law and the Family—New York, §29:6A [1978 Suppl]).
>
> ⁕ ⁕ ⁕
>
> There are no painless solutions. In the rare case, joint custody may approximate the former family relationships more closely than other custodial arrangements. It may not, however, be indiscriminately substituted for an award of sole custody to one parent. Divorce dissolves the family as well as the marriage, a reality that may not be ignored." 4 Fam. L. Rep. 2522, 2523.

We note also that from January 7, 1977, through at least September 26, 1977, defendant has had actual physical custody of the children. To order that full custody be reinstated in plaintiff at this stage would severely and unnecessarily disrupt the lives of these two children. (*Leary v. Leary*, 61

Ill. App. 2d 152, 209 N.E.2d 663; *Jenkins v. Jenkins,* 81 Ill. App. 2d 67, 225 N.E.2d 698.) Since the record in this case is now stale, we remand this cause to the circuit court of Madison County for a new and expedited hearing for the sole purpose of evaluating the status of the children at this time. If the evidence discloses that the children are still in defendant's care and custody and that they are functioning well in that environment, their permanent custody should be placed with defendant. On remand the court should further determine reasonable visitation rights of the plaintiff and, in light of the parties' previous difficulties, specify the exact procedure for transporting the children on such occasion.

Finally, we address the issue of attorneys' fees in this cause. On March 12, 1976, plaintiff's attorney petitioned the court for an order granting him attorney's fees to be paid by defendant in the amount of $5820 plus $76 for investigation. The defendant in turn filed a motion to dismiss plaintiff's petition as well as a counterpetition for an award of his attorney's fees. The October 8, 1976, order of the circuit court provided that due to plaintiff's inability to fully compensate her counsel, defendant be assessed a portion of such fees in the amount of $2200. It further allowed guardian ad litem fees totaling $1072.46, one-third to be paid by the plaintiff and two-thirds to be paid by the defendant. Apparently the first evidentiary hearing on this subject was conducted on December 22, 1976. At that time plaintiff's former trial attorney testified as to the amount of time and expenses he incurred in the preparation and trial of the instant case. His ultimate request for $5820 was based upon 145½ hours of work at a rate of $40 per hour. Plaintiff testified regarding her arrangement for the payment of her attorney's fees and finally Gerald Cohn, who was called as an expert witness, testified that in his opinion a reasonable rate in this type of case would be $35 per hour for preparation and $50 per hour for actual court appearances. The court's final order of March 3, 1977, reduced the total award of fees to plaintiff's trial counsel from $5896 to $3300 but held defendant responsible for the same total of $2200. Without explanation the trial court also increased the guardian ad litem fee to $1785.12.

■■ As defendant contests neither the validity of the court's appointment of a guardian ad litem nor the award of fees for his services, those issues are not presently before us. With regard to plaintiff's attorney's fees we recognize that a great deal of time and effort was required in the preparation and trial of this case. The court's final assessment of $3300, of which $2200 is to be paid by defendant, is clearly reasonable for the services rendered. (*Altman v. Altman,* 131 Ill. App. 2d 427, 268 N.E.2d 211; *Green v. Green,* 41 Ill. App. 3d 154, 354 N.E.2d 661.) It is well settled that the amount of attorneys' fees awarded rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. (*Canady v. Canady,* 30 Ill. 2d 440, 197 N.E.2d 42; *Roback v.*

*Roback,* 59 Ill. App. 2d 222, 207 N.E.2d 130.) Accordingly, we affirm the decision of the trial court concerning the award of attorneys' fees.

Affirmed in part; reversed in part and remanded with directions.

EBERSPACHER, P. J., and JONES, J., concur.