*In re* MARRIAGE OF LIZABETH TIFFT ENGLAND, Petitioner-Appellant, and ALBERT CHARLES ENGLAND, Respondent-Appellee.

Fourth District   No. 4—87—0026

Opinion filed August 6, 1987.

Arthur M. Lerner, of Greaves, Lerner & Kirchner, of Champaign, for appellant.

J..Steven Beckett, of Reno, O'Byrne & Kepley, P.C., of Champaign, for appellee.

JUSTICE GREEN delivered the opinion of the court:

Petitioner, Lizabeth Tifft England, appeals from an order entered December 2, 1986, in the circuit court of Champaign County continuing joint custody of the parties' minor child but changing physical custody to respondent, Albert Charles England. The court indicated that the parties, by agreement, treated a petition for aid and direction pursuant to which the order was entered, as a petition to modify the custody arrangements of the child. On appeal, petitioner maintains the trial court abused its discretion and failed to follow the requirements of the statute in ordering the change of physical custody. Petitioner requests that the portion of the December 2, 1986, order changing physical custody be set aside, and she be awarded physical custody. In the alternative, she requests a rehearing as to the instant petition. We affirm.

The record indicated: (1) A judgment order was entered in the circuit court of Champaign County on November 3, 1981, awarding joint custody of the parties' minor child, with the respondent to have physical custody from 5 p.m. on Tuesday to 8 a.m. on Thursdays; (2) at this time both parties resided at Urbana, Illinois; (3) on February 18, 1982, the parties stipulated that respondent would have custody the last week of January 1982 and all of February 1982 and thereafter the physical custody would alternate each month, with petitioner having custody in March of 1982; (4) that stipulation was approved by order entered February 18, 1982; (5) in August 1984, petitioner obtained a Ph.D. degree, and the parties agreed to an order, entered August 10, 1984, modifying the physical custody arrangement for a two-year period to allow the child to accompany his mother while she taught in Egypt; (6) that order provided for visitation by the father during the two-year period; and (7) the aforesaid agreement, which was incorporated in the order of modification, provided that after the end of the two-year period, the parties would meet and discuss options for the child's living arrangements and that if the parties could not agree, respondent's "opinions about living arrangements will carry an extra presumption of weight for the following two years" because of his loss of opportunity for visitation in 1984 and 1985.

The record also indicated that: (1) when petitioner returned to the United States, she accepted a position in Carbondale; (2) the parties were unable to resolve the question of where the child was to live, and in June of 1986, respondent filed the instant petition for aid and direction with the court; (3) the court entered a temporary order permitting the child to reside with his mother pending further proceedings; and (4) the court appointed a psychologist to conduct a mental health evaluation of the parties and the child.

On October 16, 1986, a hearing was held pursuant to the then pending petition. In an order entered December 2, 1986, the trial court determined that clear and convincing evidence established a change in the circumstances of the parties and their child since the entry of the custody order on August 10, 1984. The court further found that it was in the best interest of the child that joint custody continue but that the prior order be modified to provide physical custody of the child with the respondent during the school year and with the petitioner during his summer vacation from school, with liberal visitation by the noncustodial parent, all to begin with the second semester of the 1986-87 school year.

■■ The record of the evidence at the October 16, 1986, hearing on the petition was provided by a bystander's report which was prepared because of a malfunctioning tape recorder which had been relied upon to record the proceedings. This is the reason for petitioner's request for a new hearing. Petitioner maintains that the bystander's report was inadequate to throw enough light on the important issue involved to enable us to make an informed decision. We disagree and find the furnished bystander's report to be adequate under the circumstances. Prolonging the proceedings for a new hearing would not be in the best interest of the child or of the parties.

According to the bystander's report, petitioner testified that when she returned from Egypt, she accepted a position in Carbondale because of its proximity to Urbana. She said she felt the child was much closer to her and needed her care and attention, but that respondent's career as a physician was too demanding to allow him to pay proper attention to the child's needs. Petitioner denied that, while respondent was visiting the child in Egypt, she threatened to "hold him hostage" in her apartment until he agreed their child would reside with her upon her return to the United States. Petitioner described incidents involving respondent which showed her hostility toward him and admitted stating that the child would live with respondent "over her dead body." Petitioner stated that, while she was in Egypt, she was offered several jobs at locations throughout the United States but

accepted the lesser paying position at Carbondale because it was closer to Urbana. Petitioner said she could envision no circumstance under which she did not have custody of the child.

Respondent testified that he had continued to live in the former marital home since the dissolution of the parties' marriage, and he continued to work for the University of Illinois College of Medicine and as a consultant with the Christie Clinic. He stated that after the dissolution, he began mental health counseling with a local psycho-therapist for depression related to the marital breakup and that counseling continued for at least two years prior to the 1986 hearing on the basis of five days per week. Respondent agreed it was a positive opportunity for the child to live in Egypt, and it was his understanding that the custody modification agreement would give respondent the opportunity to make plans for the child following his return to the United States. Respondent also described several incidents which were indicative of hostility between petitioner and respondent. Respondent testified that he did not believe his profession as a physician was a hindrance to the child's residing with him. Finally, respondent denied feeling angry or cheated by the court-appointed psychologist's report.

Dr. Milton Adler, the court-appointed psychologist, filed a report indicating his conclusion that the child should continue living with his mother during the 1986-87 school year, with summer and holiday visitation by the father. However, he said that the arrangement should be reconsidered during the summer of 1987, giving prime consideration to the wishes of the child.

The criteria in a dissolution proceeding for modification after two years or more of a child custody order are as set forth in section 610(b) of the Illinois Marriage and Dissolution of Marriage Act (Act), which states:

> "(b) After the expiration of the 2 year period following a custody judgment specified in subsection (a) of this Section, the court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian, *or in the case of a joint custody arrangement that a change has occurred in the circumstances of the child or either or both parties having custody, and that the modification is necessary to serve the best interest of the child.* In the case of joint custody, if the parties agree to a termination of a joint

custody arrangement, the court shall so terminate the joint custody and make any modification which is in the child's best interest. The court shall state in its decision specific findings of fact in support of its modification or termination of joint custody if either parent opposes the modification or termination." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 40, par. 610(b).

In the case of *In re Custody of Harne* (1979), 77 Ill. 2d 414, 396 N.E.2d 499, the court indicated that the then section 610(b) of the Act was intended to reflect an underlying policy favoring finality of child custody judgments. At that time, section 610(b) required that a request for change of custody be supported by proof by a preponderance of the evidence that (1) the custodian agreed to the modification; (2) the child had been integrated into the petitioner's family with the custodian's consent; or (3) the child's current environment seriously endangered his or her physical, mental, moral or emotional health and the advantages of transferring custody outweighed the harm caused by a change of environment. (Ill. Rev. Stat. 1977, ch. 40, par. 610(b).) At that time, section 610(b) made no mention of the situation in which the parents of a child had been awarded joint custody. However, even under the wording of section 610(b) at that time, the First District held in the case of *In re Marriage of Gargus* (1981), 97 Ill. App. 3d 598, 423 N.E.2d 193, that a proceeding to modify physical custody of a child where, as here, the parents had and were permitted to retain joint custody, came within the purview of the then section 610(b).

■ Effective July 1, 1982, section 610(b) was amended by Public Act 82—715 to change the three-pronged alternative methods of proving a right to a change of custody to the present requirement of proof by clear and convincing evidence of a change in circumstances and the necessity, in the best interest of the child, to make the change in custody. (81 Ill. Laws 3813.) Effective September 17, 1982, section 610(b) was amended by Public Act 82—1002 to make the present reference to situations where parents have joint custody. (82 Ill. Laws 2616.) The changes have broadened the basis upon which modification may be made (*In re Marriage of Wechselberger* (1983), 115 Ill. App. 3d 779, 450 N.E.2d 1385) but require a more exacting level of certainty of proof. (*Mullins v. Mullins* (1986), 142 Ill. App. 3d 57, 490 N.E.2d 1375.) However, the responsibility of the reviewing court in passing upon the sufficiency of the proof has not changed. Once the trial court has made its determination that the necessary proof is established by clear and convincing evidence, we should overturn that determination only if it is contrary to the manifest weight of the evidence. *In re Custody of Sussenbach* (1985), 108 Ill. 2d 489, 485 N.E.2d 367.

Some possible uncertainty may exist as to whether the present section 610(b) covers the situation whereby a change in physical custody is sought from one to the other of parents having joint custody. As we have indicated, we note that even in the absence in the then section 610(b) of any reference to such changes of custody, in the case of *In re Marriage of Gargus* (1981), 97 Ill. App. 3d 598, 423 N.E.2d 193, that court held that section 610(b) was applicable. In any event, lack of coverage by section 610(b) would only make the proof to justify a change easier, because the best interests of the child standard of section 602 of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 602) would be applicable. We conclude that, here, the circuit court's determination that the change in custody was required because of both the change in circumstances and the best interests of the child was not contrary to the manifest weight of the evidence.

We consider first the issue of whether a change in circumstances was shown here. The first order in regard to physical custody was entered in November 1981. The child was then only 4 years old. Physical custody changed from time to time. This was possible, because both parents lived in the same community. Then, in August 1984, the parties agreed that the child should accompany his mother to Egypt. The agreement envisioned that the physical custody was a temporary matter, and that changes would have to be made when the mother and child returned to the United States. The opportunity to have the experience of living in Egypt for a short time was deemed to be an advantage for the child. When the instant petition came before the court in October of 1986, the child was then nine years old, the temporary sojourn was over, he was old enough to be better able to care for himself and requirements for his schooling necessitated that his physical custody be given to one or the other parent for the school months.

■ Because of the temporary nature of the agreed order of August 1984, the situation at the time of the February 18, 1982, order may be that to be compared with the situation at the time of the hearing in October 1986 in order to determine whether a change in circumstances existed. Regardless, however, we conclude that the difference in the situations was enough to justify the circuit court's conclusion that a change of circumstances existed. The child was older and required less care. The mother's situation was relatively permanent. No reason existed for a temporary custody in order for the child to have a unique experience. The agreed temporary physical custody should not necessarily rise by its own bootstraps to a permanent physical custody. This is particularly so under the circumstances whereby the parties agreed that if dispute arose as to physical custody upon

petitioner's return to the United States, respondent's opinion as to the physical custody of the child should be given great weight.

■ The question of the best interests of the child presents a more difficult question. He stated a preference to live with his mother. A comprehensive report by a neutral, court-appointed psychologist recommended this for the now past 1986-87 school year. The prior physical custody with the mother seemed to have worked at least reasonably well. Nevertheless, the circuit court was concerned with an overly encompassing way in which it deemed the mother to have "intertwined" her life with that of the child and felt that she had obstructed the child's opportunity to be with his father. The court also felt that the father was being more reasonable in the continuing dispute between the mother and him. It noted that the father had been receiving mental health counseling, while the mother had not. The court seemed to believe that the child's total relationship with both parents would be better if he lived with his father.

The reasons relied upon by the court to find the best interests of the child to be served by providing for the child to be in the physical custody of the father are strong enough that we do not find the court's decision to be contrary to the manifest weight of the evidence.

The decree of the circuit court is affirmed.

Affirmed.

SPITZ, P.J., and McCULLOUGH, J., concur.