*In re* MARRIAGE OF STEPHEN DULLARD, Petitioner-Appellant, and MARY MURPHY, f/k/a Mary Dullard, Respondent-Appellee.

First District (1st Division)   No. 87—3776

Opinion filed November 14, 1988.

Wayne T. Lofthouse and Richard N. Mueller, both of Schiller Park, for appellant.

Redina Friedman & Associates, of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Stephen Dullard appeals the modification of a joint custody agreement between himself and appellee Mary Murphy, formerly Mary Dullard. Stephen argues that the modification, which awards him sole custody of the minor children Amy and Chelsea Dullard during the school year and gives Mary sole custody of the children during the summer months, is not in the best interest of the children. For the reasons below, we affirm.

Stephen and Mary Dullard were divorced on July 24, 1981. The judgment for dissolution of marriage contained an agreement of joint custody of Amy, born February 17, 1977, and Chelsea, born January 12, 1979. The children lived with Mary, and Stephen was given liberal visitation rights that allowed him to see the children every weekend and during the week and on holidays.

At the time of the divorce, the parties lived within a mile of each other in the Beverly neighborhood of Chicago. Stephen was employed as an insurance underwriter and Mary was employed part time as a waitress and school teacher. Subsequently, both parties remarried. Stephen moved to Glen Ellyn, Illinois, and he and his second wife have one child. Mary remained in Beverly with her new husband, William Murphy. Mr. Murphy had three children by a previous marriage, and Mary and Mr. Murphy have two children.

After the parties remarried, cooperation and communication between them deteriorated, as did the home life in the Murphy household. Consequently, Stephen moved for modification of the custody agreement, seeking sole custody of the children. A hearing on the modification commenced on August 12, 1987.

The record shows that Mary became uncooperative with Stephen concerning his visitations, occasionally refusing to let him see the

children and occasionally making him wait to pick up the children while she made the children do last-minute household chores. The record further shows that the Murphys had difficulties paying bills and that the gas and electricity were shut off from September to November 1986. The record also shows a hostile relationship between Mary and Mr. Murphy's oldest daughter, Kathleen, which culminated with Mary destroying some of Kathleen's dresses. There was also testimony that there had been at least one fight between Mary and Mr. Murphy, related to drinking, although neither was a habitual drinker. A neighbor testified that during the incident, Amy and Chelsea sought refuge at her home.

Amy and Chelsea Dullard testified that Mary often screamed at them and slapped them, and that they were fearful of Mary when she was angry. Mary denied ever slapping the children, except to spank them on their bottoms. Both girls stated that they preferred to live with Stephen.

Two experts testified that Mary was suffering from an abnormal amount of stress, stemming from the financial difficulties and the instant litigation, recommending therapy for Mary. Only one of the experts, however, recommended removal of the children from the Murphy household, and neither felt Mary was an unfit mother. One expert also stated that it was possible that the children had exaggerated the abuses by Mary, a factor that the trial court took into account in its ruling.

The trial court found that there had been a substantial change in circumstances and that a change in custody would serve the best interest of the children. The modification order provides that Stephen have "sole care, custody and control" of the children during the nine months of the school year, and that Mary have "sole care, custody and control" of the children during the summer months, beginning five days after school ends and ending five days before school resumes. Each party has liberal visitation when the other party has custody.

Since the date of the trial court's ruling, August 31, 1987, the children have resided with Stephen. The modification order was entered November 23, 1987. Stephen appeals the modification on the ground that it is contrary to the best interest of the children. Stephen asserts that the circumstances that mandated removal of the children from the Murphy household mandated that he have permanent, full-time custody.

Stephen first argues that the modification order was based on a mistake of law because it was inconsistent with the evidence adduced

at trial, and therefore an abuse of discretion, and that alternating custody is a disfavored form of experimentation. Stephen next argues that the trial court lacked statutory authority to enter an order of "alternating" custody, because the order, being contrary to the manifest weight of the evidence, did not conform to section 610(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 610(b)). Stephen's third argument is that an award of joint or alternating custody was inappropriate because such an award should seldom be granted, and then only where the parties have demonstrated an ability and willingness to cooperate in raising the children. Finally, Stephen maintains, as in all his arguments, that the modification order was contrary to the manifest weight of the evidence. In response, Mary does not challenge the modification order, but correctly argues that the order was both within the scope of the trial court's authority and consistent with the evidence.

Stephen's arguments rely primarily on the assertion that the modification order was contrary to the manifest weight of the evidence. For example, Stephen argues that because the modification order was contrary to the weight of the evidence, the court abused its discretion, and thus the order was based on a mistake of law. Stephen also argues that because the order was contrary to the weight of the evidence, the court lacked statutory authority to enter the order. Thus, Stephen's arguments may be condensed to the questions of whether the trial court had discretion to modify the original custody agreement and whether the modification was consistent with the facts adduced at the modification hearing. The answer to both questions is yes.

■ To modify a joint custody agreement, the court must find, by clear and convincing evidence, that a change has occurred in the circumstances of either the child, or of one or both parties having custody, and that a modification is in the best interest of the child. (Ill. Rev. Stat. 1987, ch. 40, par. 610(b).) The court has discretion to determine or modify custody awards, and its determination will not be overturned absent an abuse of discretion, or unless the order was contrary to the manifest weight of the evidence. (*In re Marriage of England* (1987), 158 Ill. App. 3d 1005, 512 N.E.2d 95; *In re Marriage of Gunter* (1981), 93 Ill. App. 3d 1043, 418 N.E.2d 149.) In the instant case, it is clear that the modification order was carefully considered and within the scope of the court's discretion.

■ The clear and convincing evidence indisputably showed a change in circumstances of both the children and Mary subsequent to the original agreement. In determining the best interest of the chil-

dren, the trial court balanced two conflicting, but equally important, considerations: the apparent need to remove the children from Mary's custody while maintaining the bonds between mother and children. Mary was under abnormal stress, which affected her ability to parent the children, and the children were affected by the change in Mary's ability to function. The court concluded that the children would benefit by removal to Stephen's household. Despite the problems, however, Mary still loved her children, and they her. Mary was deemed by no one to be an unfit parent. The trial court therefore further concluded that continued contact with and guidance from Mary was also of benefit to the children. Thus, the modification order removed from Mary the substantial burdens of daily life with the children, but allowed liberal visitation and gave her custody in the summer months when daily routines are not nearly as demanding.

Because the circumstances had changed subsequent to the original custody agreement, and the court determined that a modification was in the best interest of the children, the court was empowered by section 610(b) of the Marriage and Dissolution of Marriage Act to modify the agreement. Further, the trial court did not fashion a modification order contrary to the weight of the evidence. Rather, the order conformed to the evidence by balancing conflicting, but equally important, considerations. Stephen's arguments based on the assertion that the trial court ruled against the manifest weight of the evidence, or abused its discretion, are without merit.

We address specifically two of Stephen's arguments: that a joint custody arrangement should not have been awarded where the parties are unable or unwilling to cooperate, and that the modification order creates inappropriate "alternating" custody. Under the facts, both are without merit.

Stephen argues that the modification order created a joint custody arrangement inappropriate because the parties have demonstrated an inability and unwillingness to cooperate in raising the children. The modification order, however, granted sole custody to Stephen during the school year and sole custody to Mary during the summer; the parties at no time exercise joint custody.

Stephen also argues that the "alternating" custody created by the modification is an undesirable type of experimentation because it creates an unstable home life for the children. Stephen relies on *Davis v. Davis* (1978), 63 Ill. App. 3d 465, 380 N.E.2d 415, in which, however, a temporary order of joint custody was modified five times in two years before a final custody order was entered. Further, the modifications there were in the form of temporary injunctions and

shifted the children unexpectedly from one household to another. The appellate court rightly criticized such an approach to custody, citing stability of the home environment as the most important factor in determining the best interest of the children. *Davis*, 63 Ill. App. 3d at 470.

*Davis* does not, as Stephen contends, stand for the blanket proposition that any form of divided custody should be rejected as "experimentation." The change in residence was not the danger to be avoided, but rather the frequency and circumstances under which the changes occurred. The *Davis* court sought to avoid the dangers of anxiety and insecurity in the child caused by the feeling of having no fixed, permanent home and by divided loyalties toward parents who are openly antagonistic and critical of one another. (*Davis*, 63 Ill. App. 3d at 470.) In contrast, the trial court in the instant case entered one modification of the final custody order, which provided predictable, periodic changes in the children's residence. That modification cannot be termed "experimentation."

In summary, Stephen's four issues are based principally on the argument that the trial court's ruling was contrary to the manifest weight of the evidence. It is clear, however, that the modification order was properly entered under statutory authority and was within the scope of the trial court's discretion. The trial court considered all the relevant factors, enunciated them in its ruling, and entered a modification of the original custody order that serves the best interest of the children. The modification order of the trial court is affirmed.

Affirmed.

BUCKLEY and QUINLAN, JJ., concur.